IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Thomas E. ZABLOCKI, Attorney at Law.

Supreme Court

*No. 96–3700–D. Oral argument May 28, 1998.—Decided June
24, 1998.*

(Also reported in 579 N.W.2d 233.)

For Thomas E. Zablocki there was a brief by *Dennis P. Coffey* and *Coffey & Coffey, Ltd.,* Milwaukee and oral argument by *Dennis P. Coffey.*

For the Board of Attorneys Professional Responsibility there was a brief and oral argument by *William J. Weigel,* counsel, Madison.

¶ 1. PER CURIAM. Attorney Thomas E. Zablocki appealed from two of the five conclusions of the referee that he engaged in professional misconduct and from the referee's recommendation that his license to practice law be suspended for six months as discipline for misconduct and that he be required to make restitution to a client. He did not appeal from the additional recommendation that for two years following reinstatement of his license he be required to make quarterly reports to the Board of Attorneys Professional Responsibility (Board) of his client trust account record keeping. The referee concluded that Attorney Zablocki failed to maintain a client trust account for several years and keep required records of his receipt and disbursement of client funds, deposited client funds into several personal checking accounts and commingled them with his own funds, and in one matter did not disburse to a client settlement proceeds he received on her behalf, misrepresented to her that she was not entitled to any of the settlement funds, used the balance of those funds for his own purposes, and did not deliver promptly a portion of the settlement funds in payment of a health care provider's fee. The referee

also concluded that Attorney Zablocki failed to respond to inquiries from the Board into his handling of the settlement proceeds and failed to produce timely or take reasonable steps to obtain and provide bank records the Board had requested.

¶ 2. We determine that the referee's conclusions in respect to Attorney Zablocki's violations of the Rules of Attorney Professional Conduct were properly drawn from the facts established in this proceeding. Further, the license suspension, restitution requirement, and trust account reporting condition recommended by the referee constitute the appropriate response to his misconduct. In addition to failing for several years to hold the funds of clients and others in trust and keep required records of his receipt and disbursement of those funds, Attorney Zablocki used a client's funds for his own purposes while misrepresenting to the client that none of the money he had received in settlement of her personal injury claim remained for her.

¶ 3. Attorney Zablocki was admitted to practice law in Wisconsin in 1968. His practice was a limited one until February of 1989, when he left the position of Milwaukee County Clerk. He practices in Franklin. He has been disciplined once previously for professional misconduct: on September 14, 1995, he consented to a private reprimand from the Board for failure to hold client funds in trust, fully disclose all facts and circumstances regarding his handling of client funds, and cooperate with the Board's investigation into that matter. During that investigation, the Board became aware that Attorney Zablocki might have engaged in additional professional misconduct in respect to funds of other clients and client funds in general. Rather than hold the initial matter open until it could conduct further investigation, the Board elected to obtain Attorney

Zablocki's consent to a private reprimand for the initial matter and proceed with its investigation of other matters, which led to the complaint filed in the instant proceeding.

¶ 4. The referee, Attorney Rose Marie Baron, made findings of fact and conclusions of law based on a stipulation of the parties and evidence presented by the Board at a disciplinary hearing. At that hearing, Attorney Zablocki, who was represented by counsel, called no witnesses, presented no evidence, and did not testify.

¶ 5. On or about June 1, 1992, Attorney Zablocki deposited into his personal checking account a $5000 check representing settlement of a client's personal injury claim. At the time of that deposit, the account had a balance of $1292.31, although Attorney Zablocki's check register indicated that it was overdrawn by $1401.71 for the reason that a number of checks noted in his register had not yet cleared. Attorney Zablocki asserted that he had written but had not delivered those checks.

¶ 6. After the deposit of the $5000 settlement and the clearing of some unrelated checks, the account balance on June 1, 1992 was $5907.31. By June 10, 1992, there were no funds in that account; indeed, it was overdrawn by $259.13. Attorney Zablocki took his $1600 fee from those settlement funds and on June 10, 1992, wrote a check to himself in the amount of $2000. None of the checks written on the account between June 1 and June 10, 1992 and none of the checks that cleared between those dates was payable either to the client or to the client's doctor; a number of them were to Attorney Zablocki or for his personal purposes.

¶ 7. When the client asked Attorney Zablocki about her portion of the settlement, he first told her

that not all the bills relating to her case had been paid and that he was still working on it. He responded to her subsequent inquiry that there would not be any money left for her because he had to pay her doctor, whose bill was $2012.20. At no time did Attorney Zablocki give the client a written account of his disbursement of the settlement funds, and the client received nothing.

¶ 8. The referee concluded that by failing to deliver to the client her portion of the settlement, by telling her she was not entitled to any settlement funds, and by using the balance of those funds for his own purposes, Attorney Zablocki engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).

¶ 9. Attorney Zablocki and his client had executed a doctor's lien January 10, 1991 authorizing him to pay out of any settlement proceeds the fee of the chiropractor who, at Attorney Zablocki's suggestion, was treating the client. Sometime in September, 1992, Attorney Zablocki asked the client's doctor to reduce his fee to $1800, and the doctor agreed. On September 21, 1992, Attorney Zablocki deposited the $2000 check he had written on June 10, 1992, back into his checking account, noting in his check register that it represented money from the client's settlement to pay her doctor's bill. The following day he wrote a check to the client's doctor in the amount of $1800.

¶ 10. Attorney Zablocki delivered the $1800 check to the doctor in late September, 1992, more than 100 days after he had deposited the $5000 settlement check into his personal checking account. The $1800 check was presented for payment on September 29 and again on October 2, 1992 and on both occasions was dishonored because there were insufficient funds in the account to pay it. The cause of the dishonor was a

September 29, 1992 Internal Revenue Service levy against Attorney Zablocki's checking account, then having a balance of $3900. The doctor testified that he ultimately was paid $1800 but by means other than a personal check from Attorney Zablocki.

¶ 11. During the investigation of his trust account practices, when the Board's investigator questioned the $3900 debit to his checking account, Attorney Zablocki responded that he did not know and had no recollection of it. During that meeting, the investigator warned Attorney Zablocki of the danger of keeping client funds in personal accounts, making reference to a disciplinary case involving an attorney's failure to hold funds in trust, as a result of which a client's funds were seized by a tax levy. Attorney Zablocki denied that anything like that ever had happened to him.

¶ 12. The referee concluded that Attorney Zablocki's failure to deliver promptly the fee the doctor was entitled to receive from the settlement pursuant to the lien violated SCR 20:1.15(b).[1]

¶ 13. From the time he was admitted to the practice of law and commenced a limited private practice in 1968, Attorney Zablocki maintained various personal checking accounts. After leaving his position as Mil-

---

[1] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

waukee County Clerk in early 1989 to practice law full time, Attorney Zablocki deposited client funds into at least five personal checking accounts, none of which was designated a client trust account. Attorney Zablocki used those accounts to deposit and withdraw his personal funds, to deposit clients' settlement proceeds and his fees, to pay expenses on behalf of clients, and to pay his personal and business expenses. He used two of those accounts for the deposit of personal injury settlement proceeds and for the distribution of those proceeds to clients, health care providers, and others. He also deposited into those two accounts advances from clients to pay costs and fines, funds collected on behalf of a client, and funds that were to be paid to a third party.

¶ 14. The referee concluded, as the parties had stipulated, that by depositing client funds into several personal checking accounts and commingling his own funds with those belonging to clients and others, Attorney Zablocki violated SCR 20:1.15(a).[2]

¶ 15. In August of 1995, the Board opened an investigative file concerning Attorney Zablocki's possible commingling of client funds, based upon information it had obtained in the course of its investi-

---

[2] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**
(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "client's Account" or "Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

gation of a separate matter that led to the imposition of a private reprimand. When asked by the Board what records he kept of client funds coming into his possession, Attorney Zablocki stated that he did not maintain a ledger of deposits and disbursements on behalf of each client and third party and did not have any specific records that would show monies belonging to any client or third party for the reason that he never maintained any client funds but acted only as an "immediate depository and distributee of any funds." When asked whether he believed funds belonging to clients or third parties did not have to be held in trust if they were held for only a short period of time, Attorney Zablocki responded that he did not hold any client monies in trust but was using his checking account only as a distribution account. The referee concluded that from at least 1991 through September, 1995, Attorney Zablocki failed to keep required trust account records, in violation of SCR 20:1.15(e).[3]

---

[3] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash

¶ 16. In the course of the investigation, when asked to respond to specific questions and produce bank statements and canceled checks for any account into which he had deposited client funds, Attorney Zablocki did not respond within the time specified in the request. He gave no reason for his lack of response and did not request additional time to respond or provide the requested records. The Board sent him a second request on September 22, 1995, to which he responded by addressing the questions set forth in the Board's initial letter, but he did not produce the requested bank statements and canceled checks, as he said he was continuing to look for them.

¶ 17. The Board repeated its request for the records October 6, 1995, asking specifically that he produce those records relating to three specified checking accounts within 10 days. Attorney Zablocki did not respond timely, give a reason for not doing so, or request additional time to provide the records. After the Board again requested those records on October 26, 1995, Attorney Zablocki delivered some but not all of them. By letter of March 22, 1996, he was notified that numerous bank statements for the three accounts were missing and was asked to produce them within 20 days. He did not respond timely, give a reason for not doing so, or ask for more time.

¶ 18. In May, 1996, the Board served Attorney Zablocki with a request for production of records, together with an admission of service form that he was asked to return. He was notified that if he did not return the admission of service, he would be liable for

---

which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

the cost of having the request served on him personally. When Attorney Zablocki did not return the admission of service form, the Board then had him served personally on May 20, 1996. Following that service, some additional records were delivered to the Board by Attorney Zablocki's secretary, who stated that Attorney Zablocki was unable to locate any additional records in his office.

¶ 19. On June 3, 1996, the Board sent Attorney Zablocki a summary of the items, including bank statements and deposit slips, that had not been produced and asked that he obtain them from his banks by June 14, 1996. He did not respond timely to that request or give any reason for not doing so; he did not request additional time to provide the records. On June 24, 1996, Attorney Zablocki's secretary told the Board that Attorney Zablocki had requested the records from the banks on June 20, 1996. On July 24, 1996, the Board received the bank statements it had requested but no deposit slips were provided. Attorney Zablocki gave no explanation for their absence.

¶ 20. The referee concluded that by failing to respond timely or at all to the Board's correspondence and by failing to produce timely or take reasonable steps for more than 10 months to obtain some of the requested bank records, Attorney Zablocki failed to cooperate with the Board's investigation, in violation of SCR 21.03(4)[4] and 22.07(2) and (3).[5]

---

[4] SCR 21.03 provides, in pertinent part:

**General principles.**

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

¶ 21. As discipline for his misconduct established in this proceeding, the referee recommended that the court suspend Attorney Zablocki's license for six months, as the Board had proposed. In determining appropriate discipline to recommend, the referee considered as aggravating factors that, unlike his misconduct that resulted in the private reprimand, Attorney Zablocki's handling of settlement proceeds here caused a client financial harm and that he showed a "reckless disregard" of his obligation to cooperate with the Board in its investigation, in particular by his "dissembling" about the IRS tax levy that caused his checking account to be overdrawn. The referee also noted as an aggravating factor that Attorney Zablocki's refusal to retrieve from his bank the records the Board had requested required the Board to obtain them by subpoena.

---

[5] SCR 22.07 provides, in pertinent part:

**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

¶ 22. The referee rejected Attorney Zablocki's contention that if his misconduct for which he consented to the reprimand had been considered with that established in this proceeding at the same time rather than serially, appropriate discipline would be no more than the private reprimand. The referee also rejected his argument that client funds were not misappropriated but merely were mishandled. The referee stated that this is not the case of an attorney who was simply a sloppy bookkeeper; Attorney Zablocki specifically told his client there was no money left for her since he had used all of it to pay her bills—a demonstrably false statement made with the intent to mislead the client.

¶ 23. In addition to the six-month license suspension, the referee recommended that Attorney Zablocki be required to make restitution to his client of the $1600 to which the record shows she was entitled. In making that recommendation, the referee rejected Attorney Zablocki's contention, which he also made in this appeal, that the client owed money to another doctor and to a clinic for services that arose out of her personal injury, as the record does not show that Attorney Zablocki paid either of those two bills on behalf of his client. The referee also rejected Attorney Zablocki's assertion, reasserted in this appeal, that restitution should not be ordered because the client can establish her right to payment by litigation.

¶ 24. Finally, the referee recommended that as a condition of reinstatement of his license to practice law and for a period of two years thereafter, Attorney Zablocki be required to provide the Board with quarterly reports of his trust account record keeping. Attorney Zablocki did not object to that condition.

¶ 25. In this appeal, Attorney Zablocki contended that there was no clear and satisfactory evidence sup-

porting the referee's conclusions that his statement to the client that there was no settlement money left for her was a misrepresentation and that he did not pay the chiropractor's fee promptly. It is his position that the evidence showed only that out of the $5000 settlement he took his $1600 fee and paid the doctor $1800; there was no proof that he converted any of the settlement money to his own benefit or "intended" to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Consequently, he asserted, he should not be ordered to make restitution to the client, as the client has recourse outside this disciplinary proceeding to establish her entitlement to any portion of the settlement proceeds.

¶ 26. Attorney Zablocki also argued that the testimony of the chiropractor was insufficiently conclusive in respect to the date he spoke briefly to Attorney Zablocki and agreed to reduce his fee to $1800 and the date he ultimately was paid. The doctor estimated that the payment was made some two weeks following the conversation. Even then, the check he received was dishonored twice when presented for payment. Attorney Zablocki contended further that there was nothing in the record to establish that the delay from late May, 1992, when he received the settlement proceeds, to late September, 1992 for payment of the doctor's bill was "unreasonable."

¶ 27. We find no merit to any of Attorney Zablocki's arguments. The client testified that Attorney Zablocki told her there was no money remaining from the $5000 settlement he deposited into his personal checking account, as he had used the entire amount to pay her bills and his fee. That testimony was unrebutted; Attorney Zablocki did not testify or introduce any evidence to the contrary. Further, it was

undisputed that between the deposit of the $5000 settlement check on June 1, 1992 and June 10, 1992, the checks Attorney Zablocki had written were to himself or for his personal purposes, resulting in a $260 overdraft in his personal checking account; none of those checks related to disbursements on behalf of the client. It was also undisputed that Attorney Zablocki never gave the client any portion of the settlement proceeds, not even the $161 deposition fee he had her pay. Finally, Attorney Zablocki never gave the client an accounting of his distribution of the settlement proceeds. Based on those facts, the referee properly concluded that Attorney Zablocki used the portion of the personal injury settlement proceeds belonging to the client for his own purposes and misrepresented to her what he had done with those proceeds.

¶ 28. Also proper is the referee's conclusion that Attorney Zablocki failed to make prompt payment of the doctor's bill. He had the settlement funds available to do so June 1, 1992 and in fact took $2000, the anticipated amount of those fees, from the settlement proceeds ten days later. He did not return that amount to the account for more than three months. While not specific as to the date, the doctor testified that it was not until two weeks or so following the brief conversation he had with Attorney Zablocki about reducing his fee that the doctor received a check from Attorney Zablocki, one that subsequently was dishonored on the two occasions he attempted to negotiate it.

¶ 29. On the issue of discipline, Attorney Zablocki contended that the six-month license suspension recommended by the referee is excessive in light of his position that two of the referee's five conclusions in respect to his professional misconduct were not established by clear and satisfactory evidence. He argued

further that the private reprimand to which he consented prior to the commencement of this proceeding should be acknowledged as mitigating the severity of discipline to be imposed here, as he responded to that reprimand by opening a client trust account for the first time, thereby demonstrating his effort to comply with the court's rules. He also asserted that had the misconduct established in this proceeding been considered together with the misconduct in handling client funds that was the basis of the private reprimand, no more severe discipline than that private reprimand would have been warranted.

¶ 30. Attorney Zablocki's argument ignores the fact that the misrepresentation to his client regarding the portion of the settlement that remained after he took his fee and paid the chiropractor and his withdrawal of the entire amount of the settlement within 10 days of receipt constitute professional misconduct of a substantially more serious nature than that for which he consented to the private reprimand. Here, Attorney Zablocki repeated the same misconduct in respect to the deposit and disbursement of client funds and record keeping, and he also made misrepresentations to a client and to the Board, did not make prompt payment to a client and to a third person of funds to which they were entitled, and did not provide a full accounting of property he received on behalf of the client. The referee noted that independent of the earlier misconduct in dealing with another client's personal injury claim, Attorney Zablocki's conduct in respect to the client matter in the instant proceeding "is of a magnitude to independently require serious discipline."

¶ 31. We agree. We also note that Attorney Zablocki's failure to cooperate with the Board's investigation in the instant proceeding and his continuing

failure to properly account for client funds occurred after he had been privately reprimanded for the same kind of misconduct.

¶ 32. In respect to his contention that the misconduct considered in the instant proceeding should be viewed together with the misconduct that resulted in the private reprimand and, taken together, deemed to warrant discipline less severe than the license suspension recommended by the referee, we determine that the six-month license suspension is appropriate discipline to impose for Attorney Zablocki's misconduct established in this proceeding without regard to the fact that he had consented to a private reprimand for some of the same misconduct shortly before the commencement of this proceeding. We have not considered that private reprimand a factor in aggravation of either the seriousness of the misconduct established here or of the severity of discipline to impose for it.

¶ 33. We also determine it appropriate to require Attorney Zablocki to make restitution to his personal injury client in the amount of $1600 and to report his handling of client funds and his trust account dealings to the Board periodically for two years following reinstatement of his license, as the referee recommended. Attorney Zablocki's position that restitution should not be ordered but that the client should be left to seek redress through litigation is untenable. As the referee stated in her report, "This is a case in which a trusting client was harmed by her attorney's unprofessional conduct; she should not have to resort to litigation in order to retrieve her own money which was held by [Attorney Zablocki] for his own personal use."

¶ 34. IT IS ORDERED that the license of Thomas E. Zablocki to practice law in Wisconsin is suspended for a period of six months, effective August 10, 1998.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this order Thomas E. Zablocki make restitution as specified in this opinion.

¶ 36. IT IS FURTHER ORDERED that as a condition of reinstatement of his license to practice law and for a period of two years thereafter, Thomas E. Zablocki provide the Board of Attorneys Professional Responsibility with quarterly reports satisfactory to the Board concerning his trust account record keeping.

¶ 37. IT IS FURTHER ORDERED that within 60 days of the date of this order, Thomas E. Zablocki pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Thomas E. Zablocki to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 38. IT IS FURTHER ORDERED that Thomas E. Zablocki comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.